**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 14-180-DLB**

**GARY COUCH**                                                                                                **PLAINTIFF**

**vs.**                         **MEMORANDUM OPINION & ORDER**

**CAROLYN W. COLVIN, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                             **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby **reverses and remands** the decision of the Commissioner.

      **I.**     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Gary Couch filed an application for disability insurance benefits on May 26, 2011, alleging disability as of April 12, 2010. (Tr. 10). Plaintiff's application was denied initially and upon reconsideration. (*Id.*) On March 7, 2013, Administrative Law Judge Jonathan Stanley conducted an administrative hearing at Plaintiff's request. (*Id.*) On March 22, 2013, ALJ Stanley ruled that Plaintiff was not disabled and therefore not entitled to benefits. (Tr. 21). This decision became the final decision of the Commissioner when the Appeals Council denied review on June 17, 2014. (Tr. 1).

1

On August 12, 2014, Plaintiff filed the instant action. (Doc. # 2). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 11, 12).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

(6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 12). At Step 2, the ALJ found that Plaintiff's obesity, degenerative disc disease (cervical and lumbar spine), major depressive disorder, generalized anxiety disorder NOS, and posttraumatic stress disorder were severe impairments within the meaning of the regulations. (*Id.*)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 13-14). At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work, as defined in 20 C.F.R. 416.967(b).

> The claimant can perform work at the light exertional level except he can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally reach in all directions using his left non dominant upper extremity, but has no limitations with regard to use of his dominant right upper extremity; must avoid concentrated exposure to extremes in cold an vibration; cannot work at unprotected heights or around hazards, such as heavy equipment; can understand, remember and carry out short, simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can manage and tolerate simple, routine changes in the work place setting; and can interact occasionally with supervisors and coworkers in a nonpublic work environment.

(Tr. 14). Based on this assessment, the ALJ concluded that Plaintiff was unable to perform his past relevant work experience as a school janitor. (Tr. 19).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, he found that there was a significant number of jobs in the national and regional

economies that Plaintiff could perform. (*Id.*). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 20). The VE testified that an individual with Plaintiff's vocational profile and RFC could perform jobs involving benchwork assembly (2,000 jobs in Kentucky/95,300 jobs nationally) and weighing, checking, measuring or inspecting (1,000 jobs in Kentucky/62,700 jobs nationally). (*Id.*) Based on the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and therefore concluded that he did not have a "disability" as defined under the Social Security Act. (*Id.*)

**C.     Analysis**

Plaintiff presents two arguments on appeal. (Doc. # 11-1 at 1-2). First, he contends that the ALJ improperly weighed his treating physician's medical opinion. (*Id.*) Second, he asserts that the ALJ failed to account for the combined effects of his various impairments in determining RFC. (*Id.*) Having found it necessary to remand the case based on Plaintiff's first argument, the Court does not reach his second argument.

**1.     The ALJ erred in his application of the treating physician rule.**

An ALJ must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ decides that the treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how

4

much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

The regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Accordingly, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996); *see also Wilson*, 378 F.3d at 546 (remanding the case due to the ALJ's failure to follow these guidelines). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

The Sixth Circuit has held that ALJs should not give a treating source's opinion less than controlling weight solely because another medical source reaches a conflicting conclusion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009) (remanding the case because the ALJ "made his own medical evaluation [by] reaching a conclusion that lay between the two conflicting absolute views of the physicians"). Social security disability cases often involve conflicting medical assessments. *Id.* If ALJs were allowed to disregard treating source opinions every time another source presented contrary conclusions, "it would be a rare case indeed in which [controlling] weight would be accorded." *Id.* Similarly, an ALJ's non-compliance with the treating physician rule cannot be excused just

5

because his decision is otherwise supported by substantial evidence in the record. *Wilson*, 378 F.3d at 546. "[T]o recognize substantial evidence as a defense to non-compliance with § 1527(c)(2) would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.*

Plaintiff's treating physician is Dr. Rebecca Osborne.[1] On January 28, 2013, she administered a "physical capacities evaluation" on behalf of Plaintiff and made certain findings that suggest a more restrictive RFC than that determined by the ALJ. (Tr. 567). In particular, she noted that Plaintiff was limited to lifting 10 pounds occasionally and 5 pounds frequently. (*Id.*) She also opined that Plaintiff could stand and sit for no more than three (3) hours in an eight (8) hour workday, and could only occasionally squat, crawl, climb or reach above shoulder level. (*Id.*) Dr. Osborne concluded that Plaintiff suffered from moderate to severe pain and would require a sit/stand option every thirty (30) minutes to an hour during a typical workday. (*Id.*)

The ALJ reviewed the physical capacities evaluation in reasonable detail. (Tr. 17). Although some of Dr. Osborne's findings are unmistakably present among the various limitations in Plaintiff's RFC assessment,[2] the ALJ ultimately chose to discount her opinion

---

[1] The Commissioner admits that Dr. Osborne qualifies as a treating physician. (Doc. # 12 at 9).

[2] For instance, as to crawling and crouching (or squatting), the residual capacities evaluation and Plaintiff's RFC assessment identically state that he can perform either of these activities only occasionally. (Tr. 19, 567). With respect to climbing, the residual capacities evaluation again states that Plaintiff can do so only occasionally. Similarly, Plaintiff's RFC assessment states that he can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; thus, if anything, the ALJ's findings are slightly more restrictive than Dr. Osborne's. (*Id.*) The Court realizes that, in all likelihood, the ALJ did not actually rely on Dr. Osborne's opinion, but rather on the opinions of the non-examining state agency physicians, whose comments also match Plaintiff's RFC assessment. (Tr. 19). Nonetheless, it is quite relevant to the Court's analysis that certain of Dr. Osborne's findings, which the ALJ purports to have given minimal weight, are

6

as follows:

> Little weight is given to the physical capacities evaluation by Rebecca Osborne, M.D., the claimant's family practitioner at Exhibit 19F. The assessment that the claimant can only stand and sit a title [sic] of 3 hours in an 8-hour workday is wholly unsupported by her treatment records or other treatment records of evidence and are therefore rejected.

(Tr. 19). Aside from these statements, the ALJ provided no further analysis regarding the weight he gave to Dr. Osborne's medical opinion.

The explanation above does not comply with the procedural requirements of § 1527(c)(2). While the ALJ made clear that he would not afford controlling weight to the physical capacities evaluation, he only explained this decision with respect to the single finding that Plaintiff could sit or stand for no more than three (3) hours during an eight (8) hour workday. As such, the Court is completely unaware of why the ALJ discounted the remainder of the physical capacities evaluation. This is particularly troublesome in light of Dr. Osborne's additional finding that Plaintiff can only lift ten (10) pounds occasionally and five (5) pounds frequently. (Tr. 567). Such a restriction strongly suggests that Plaintiff is relegated to performing sedentary work, as defined by 20 § C.F.R. 416.967(a), and yet the ALJ concluded that he can perform light work, subject to various limitations. The obvious dissonance between Dr. Osborne's opinion and Plaintiff's RFC should have been addressed in the ALJ's explanation.

Even if the Court's only concern was the number of hours that Plaintiff could sit or stand during a typical workday, the ALJ's efforts would still fall short of the required standard. The ALJ flatly declared that Dr. Osborne's sit/stand limitation is "wholly

---

consistent with, and in some cases identical to, the evidence relied upon to construct Plaintiff's RFC.

unsupported by her treatment records or other treatment records." (Tr. 19). Without further explanation, this statement does not establish that her opinion is based upon unacceptable diagnostic techniques or is inconsistent with other substantial evidence in the record. Needless to say, it also does not constitute a "good reason" as that term is defined by SSR 96-2p.

  The ALJ's decision should have been sufficiently specific such that the Court could identify the weight he gave to the treating source's medical opinion and the reasons for giving that weight. However, as noted above, he only discussed one of Dr. Osborne's many pertinent findings, and did so in a cursory fashion. Further, despite his decision to afford "little weight" to the physical capacities evaluation, some of the limitations noted therein were also reflected in Plaintiff's RFC assessment, while others, inexplicably, were not. *See supra* note 2. This calls into question whether Dr. Osborne's opinion was discounted in its entirety, or only in part. With such important issues left unresolved, the Plaintiff cannot fully understand why Dr. Osborne's numerous findings were so heavily discounted, and the Court is unable to conduct meaningful review

  To the contrary, the Commissioner states that "[t]he ALJ's decision to discount Dr. Osborne's opinion because it was inconsistent with the examination findings and the other doctors' opinion was reasonable and supported by the record." (Doc # 12 at 10). In essence, the Commissioner invites this Court to overlook the ALJ's deficient explanation because there is enough evidence in the record to support his ultimate conclusion. However, the Sixth Circuit's decision in *Blakely* clearly prohibits courts from accepting such logic, because to do so would thwart the very purpose of § 1527(c)(2).

When an ALJ fails to comply with § 1527(c)(2), remand is required unless such failure amounts to harmless error. *Wilson*, 378 F.3d at 547. In *Wilson*, the court noted that noncompliance can be excused "where the Commissioner has met the goal of [§ 1527(c)(2)] – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Id.* In applying this notion, the Sixth Circuit has explained that the goal of § 1527(c)(2) can be met "by indirectly attacking the 'supportability' of the doctor's opinion . . . or the 'consistency' of his opinion with the record as a whole." *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).[3]

Here, the ALJ extensively discussed the other medical evidence pertaining to Plaintiff's alleged physical limitations. (Tr. 15-19). He analyzed the findings of several examining physicians, as well as those of two state agency non-examining physicians. (*Id.*) He also reviewed the results of Plaintiff's September 2011 consultative examination. (Tr. 16-17). Although, to some extent, the ALJ did indirectly attack the consistency of Dr. Osborne's opinion in relation to the record as a whole, the evidence he cites is simply not compelling enough to excuse noncompliance with § 1527(c)(2). *See Nelson*, 195 F.App'x at 472 (noting with respect to its decision to apply the harmless error exception "that this is a *rare case* of the ALJ's analysis meeting the goal of the rule even if not meeting its letter.") (emphasis added). Moreover, while the ALJ ostensibly discounted the entire physical capacities evaluation, some of the limitations noted by Dr. Osborne were reflected

---

[3] Although never explicitly raised by the Commissioner, the Court will briefly address the harmless error doctrine because the Commissioner's Motion spends several pages alleging that Dr. Osborne's findings are inconsistent with those of various other physicians. (Tr. 7-10).

9

in Plaintiff's RFC nonetheless, see supra note 2, which also weighs against applying the harmless error exception. See Hall, 148 F. App'x at 465 (declining to apply the harmless error exception because the ALJ did not explain why he adopted some aspects of the treating physician's opinion while rejecting others). Overall, the Court finds that ALJ Stanley's noncompliance with the treating physician rule does not constitute harmless error. Therefore, remand is required.

## 2. The Court does not reach Plaintiff's second argument.

Plaintiff's second argument states that the ALJ failed to account for the combined effects of his various impairments in determining RFC. Ordinarily, the Court would be inclined to address this argument so as to provide the ALJ further guidance on remand. However, because such an argument depends, to one degree or another, on the weight given to Dr. Osborne's opinion, the Court will defer this issue until the ALJ has reconsidered his treatment of that opinion on remand.

## III. CONCLUSION

The Court concludes that the ALJ failed to follow SSA regulations and remand is required. Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

1. Plaintiff's motion for summary judgment (Doc. # 11) is **GRANTED**;

2. Defendant's motion for summary judgment (Doc. # 12) is **DENIED**;

3. This action is hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain his treatment of Dr. Osborne's opinion, consistent with this Memorandum Opinion and Order; and

4.      A Judgment will be entered contemporaneously herewith.

This 20th day of March, 2015.



G:\DATA\SocialSecurity\MOOs\London\6-14-180 Couch MOO.wpd